# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE

## DISTRICT OF FLORIDA

## TAMPA DIVISION

### DAVID ADEEB, Plaintiff,

FEB 13 2026 PM2:46
FILED - USDC - FLMD - TPA

### v.

### ROXTEC INC., a Foreign Profit Corporation, Defendant.

Case No.: 8:25-cv-02571-WFJ-CPT

## SECOND AMENDED COMPLAINT
### (Jury Trial Demanded)

[Content begins on the following page]

Plaintiff, DAVID ADEEB ("Plaintiff"), sues Defendant, ROXTEC INC. ("Defendant" or "Roxtec"), and alleges:

## I.    NATURE OF THE ACTION

1. This is an action for damages and other relief arising from Roxtec's failure to pay Plaintiff an earned, performance-based annual bonus that was promised as part of his compensation for his work as a Sales Manager, and for Roxtec's retaliatory conduct following Plaintiff's objections to that non-payment.

2. Plaintiff asserts state-law claims for breach of contract, promissory estoppel, fraudulent concealment, fraudulent misrepresentation, retaliation under the Florida Whistleblower's Act, breach of the implied covenant of good faith and fair dealing, and, in the alternative, unjust enrichment. Plaintiff also asserts a federal claim for retaliation under the Fair Labor Standards Act.

3. Plaintiff seeks unpaid bonus compensation and other unpaid wages, back pay, front pay, liquidated damages where permitted, compensatory damages, prejudgment interest, attorney's fees and costs as provided by law, and all other legal or equitable relief as the Court deems just and proper.

## II.    JURISDICTION AND VENUE

4.  This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action includes a claim for retaliation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).

5.  This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a citizen of Florida, Defendant is a citizen of another state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.  This Court has supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Plaintiff's federal claim.

7.  Venue is proper in the Tampa Division of the Middle District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including in Pasco County, Florida.

## III.    PARTIES

8.  Plaintiff is a natural person and citizen of Florida who, at all relevant times, resided in Pasco County, Florida.

9.  At all relevant times, Plaintiff was employed by Defendant as Sales Manager for Roxtec's Power Transmission & Distribution ("T&D") segment, a salaried

management position with responsibility for sales performance and a team of direct reports.

10. Defendant, Roxtec Inc., is a foreign profit corporation organized under the laws of Oklahoma, with its principal place of business in Tulsa, Oklahoma, and is registered to do business in Florida.

11. At all relevant times, Roxtec employed at least ten (10) employees and was an "employer" within the meaning of applicable Florida law and the FLSA.

12. At all relevant times, Roxtec acted by and through its officers, directors, managers, and agents, including Vice President of Sales Marcelo Campos ("Campos") and Human Resources Director Charla Martin ("Martin"), who were acting within the course and scope of their employment when they communicated with Plaintiff regarding his compensation, performance, and termination.

## IV. FACTUAL ALLEGATIONS

### A. Hiring and Bonus Promises

13. In or about September 2022, Roxtec offered Plaintiff the position of Sales Manager for the Power T&D segment.

14. Roxtec initially proposed a base salary of approximately $150,000. Plaintiff declined this offer because he expected higher total compensation for a role with nationwide sales responsibility.

15. Following further discussion, Roxtec increased the base salary offer to approximately $157,500 per year. Plaintiff still viewed this salary as below the level he would normally require for a position of this scope.

16. Roxtec's written offer letter (the "Offer Letter") stated that, as Sales Manager, Plaintiff would be "eligible to participate in the Annual Incentive Program," and that the incentive bonus was budgeted at a percentage of his annual salary, tied to performance, sales growth, and key objectives. A true and correct copy of the Offer Letter is attached as Exhibit A.

17. During the hiring process, Roxtec emphasized that Plaintiff's total compensation would include a significant performance-based annual bonus in addition to his base salary.

18. Plaintiff accepted Roxtec's revised offer with the lower base salary in reliance on Roxtec's representations that his performance-based annual bonus would be a substantial and integral part of his annual compensation and could increase his total compensation to a level closer to what he had originally sought.

19. Plaintiff began employment with Roxtec in or about October 2022 as Sales Manager for Power T&D and remained employed through the end of Roxtec's 2023 fiscal year, and thereafter into 2024 until his termination.

20. Plaintiff satisfactorily performed his job duties during the 2023 fiscal year and remained employed through the end of FY 2023 (December 31, 2023), thereby satisfying any requirement that he remain employed through year-end to be eligible for an annual bonus.

## B. FY 2023 Bonus Plan and Concealment

21. In early 2023, Roxtec and its managers communicated specific performance targets and bonus-plan figures to Plaintiff, instructing him to use them to calculate his bonus for the 2023 fiscal year.

22. On February 22, 2023, Campos wrote to Plaintiff that, for FY2023, "all of our employees will receive an Annual Bonus Plan as part of their annual compensation," confirming that Plaintiff's annual bonus was treated as part of his compensation, not a discretionary perk. A true and correct copy of this email communication is attached as Exhibit B.

23. On or about February 2023, Campos provided Plaintiff with an Excel template labeled as an individual bonus plan for 2023 and directed him to use specific figures supplied by Roxtec, including sales targets and thresholds, to calculate his annual bonus (the "February 2023 Bonus Template").

24. Campos also provided Plaintiff with official Power Segment sales targets for FY 2023 issued by Roxtec's finance department and instructed Plaintiff to insert those figures into the February 2023 Bonus Template. A true and correct copy of Campos's February 22, 2023 email providing these sales figures is attached as Exhibit C.

25. The February 2023 Bonus Template contained formulas that automatically calculated Plaintiff's annual bonus based on the sales targets, thresholds, and performance metrics supplied by Roxtec.

26. Using the figures and instructions provided by Campos and the finance department, Plaintiff calculated his FY 2023 bonus under the February 2023 Bonus Template to be approximately the amount of his annual base salary.

27. Throughout FY 2023, Plaintiff reasonably relied on the February 2023 Bonus Template, the official sales targets, and the instructions he received from Campos and Roxtec in performing his work, setting goals, and managing his team to meet the required performance targets.

28. At no time during FY 2023 did Roxtec provide Plaintiff with any different written bonus plan for 2023, nor did it tell him that any other plan had been approved for him.

29. Upon information and belief, Roxtec contends that a different bonus plan for Plaintiff was approved internally in or about April 2023 (the "April 2023 Plan").

Plaintiff lacks personal knowledge as to whether any such plan in fact existed, was signed, or was formally "approved" by any executive; this allegation about the April 2023 Plan is based solely on Roxtec's own statements in February 2024.

30. Roxtec did not provide Plaintiff with a copy of the April 2023 Plan during FY 2023, did not ask him to sign it, and did not inform him that it would be used to calculate his bonus instead of the plan and figures he had been given in February 2023.

31. Roxtec's ordinary practice for bonus plans was to prepare a written plan, obtain signatures from management and the employee, and circulate a signed or partially signed PDF copy to the employee for review and retention. Plaintiff followed this practice for bonus plans for his own direct reports, who received written plans for 2023.

32. Roxtec did not follow this ordinary practice for Plaintiff's 2023 bonus. Plaintiff never received a signed or partially signed PDF bonus plan for 2023, only the February 2023 Bonus Template and the associated figures and emails from Campos.

33. Plaintiff does not know whether Roxtec's internal records reflect any signature or formal approval by any executive for any 2023 bonus plan for him. If any such internal approvals existed, including any CEO signature, they were

handled entirely within Roxtec and were never shared with or explained to Plaintiff.

## C. Plaintiff's Objections to the Bonus Non-Payment

34. In early 2024, after the close of FY 2023, Roxtec informed Plaintiff that his 2023 bonus would be approximately $5,000.

35. This announced bonus was drastically lower than the bonus amount Plaintiff had calculated using the February 2023 Bonus Template and the figures provided by Roxtec and was inconsistent with the expectations created by Roxtec's representations and instructions.

36. On or about February 20, 2024, Plaintiff emailed Campos to object to the discrepancy, explain that he had used the exact figures Campos had supplied in February 2023, and question how Roxtec arrived at the $5,000 figure. Plaintiff referenced and attached the prior communications and the February 2023 figures.

37. That email communication included Plaintiff's written complaint to Campos stating that he had relied on the February 2023 Bonus Template and figures throughout FY 2023, that Roxtec failed to provide him with the bonus structure that governed his FY 2023 compensation, and that Roxtec's failure to disclose any different 2023 plan until after the year had closed improperly shifted the consequences of Roxtec's own error onto him.

38. On or about February 22, 2024, Plaintiff again wrote to Campos, noting that other employees had already been paid their 2023 bonuses in full while his remained unpaid or unresolved, and reiterating his objections to the unpaid portion of his 2023 bonus. True and correct copies of Plaintiff's February 2024 emails to Campos objecting to the non-payment and underpayment of his earned 2023 bonus are attached as Exhibit D.

39. On or about February 23, 2024, Plaintiff escalated his concerns by writing to HR Director Martin. He forwarded his prior emails, described the discrepancy between the bonus he had calculated under the February 2023 figures and the $5,000 amount, and complained about Campos's attempts to bypass his managerial authority with respect to his team.

40. In response, Martin informed Plaintiff that an internal bonus plan for him had allegedly been approved in April 2023 and used to calculate his 2023 bonus. She told Plaintiff that this April 2023 Plan had been approved and adopted as his operative 2023 bonus plan and that Roxtec was relying on it to justify the approximately $5,000 bonus payment. A true and correct copy of Martin's February 28, 2024 email titled "2023 Bonus Plan" is attached as Exhibit E.

41. Roxtec did not provide Plaintiff with a copy of the April 2023 Plan for his review, either in 2023 or when he objected in 2024, and did not allow him to

compare its terms with the February 2023 Bonus Template and figures he had been given.

42. In a recorded meeting in or about February 2024, Plaintiff reminded Campos that, in a prior discussion, Campos had acknowledged it was an error on his part that Plaintiff was not provided with the same bonus file and figures that had been submitted to management, and that different numbers had been given to Plaintiff by email. Plaintiff stated that he appreciated Campos "stepping up" and owning that mistake. During that recorded conversation, Campos did not dispute or correct Plaintiff's description of the error or his prior acknowledgment.

43. Despite Plaintiff's repeated written objections and requests for clarification, Roxtec never provided him with a clear explanation or documentation showing how it had calculated the $5,000 bonus amount.

44. Plaintiff's emails and complaints in February 2024 were made in good faith and were intended to challenge what he believed to be unlawful or improper non-payment and underpayment of earned compensation.

45. In these February 20, 22, and 23, 2024 emails, Plaintiff expressly complained that Roxtec had committed a major mistake in handling his 2023 bonus, that it was refusing to pay him the full compensation he was owed for work he had already performed in 2023, and that it was unreasonable and improper for

Roxtec to expect him to put 100% effort into his work while refusing to pay him what he was owed in return. Plaintiff believed Roxtec's refusal to pay his earned compensation violated his rights under wage and compensation laws.

## D. 2024 Bonus Plan, PIP, and Termination

46. For 2024, Roxtec followed its usual practice of finalizing and circulating written bonus plans for other employees, including members of Plaintiff's team.

47. Roxtec did not provide Plaintiff with any written 2024 bonus plan, draft or final, at the time it was providing such plans to other managers and employees.

48. After Plaintiff raised objections in February 2024 about his 2023 bonus and about the concealment of the April 2023 Plan, Roxtec's treatment of Plaintiff changed.

49. Campos increasingly bypassed Plaintiff in communications with Plaintiff's direct reports, undermining Plaintiff's role and authority as Sales Manager. Plaintiff complained about this bypassing in his written communications.

50. In or about April 2024, shortly after Plaintiff's written objections about his unpaid and underpaid bonus, Roxtec placed Plaintiff on a Performance Improvement Plan ("PIP").

51. The PIP imposed extensive reporting obligations, required Plaintiff to perform tasks he alleges were normally done by his subordinates, mandated increased travel, and set short deadlines relative to the volume of work.

52. The PIP did not identify specific, documented performance deficiencies, customer complaints, or sales failures that would justify such a plan. It contained general "expectations" rather than concrete examples of misconduct or poor performance.

53. Plaintiff had not previously been subject to discipline of this kind, and his prior performance reviews in Roxtec's system had been positive.

54. The original PIP period was approximately April 15 through July 15, 2024. Near the end of that period, Campos extended the PIP through approximately August 30, 2024, citing an alleged lack of meetings to review progress.

55. The limited number of progress meetings during the PIP period was due largely to Campos's own scheduling conflicts and unavailability, not because Plaintiff failed to attend meetings or provide information.

56. In or about August 2024, Roxtec terminated Plaintiff's employment, claiming that he had lied about his arrival time for a company meeting in Tulsa, Oklahoma.

57. Plaintiff denies that he lied about his arrival time and contends that Roxtec's stated reason for termination was false and pretextual.

58. Plaintiff provided the Florida Department of Commerce (Reemployment Assistance Program) with documentation of his travel and arrival time, and the agency determined that he was discharged for reasons other than disqualifying misconduct and approved his unemployment benefits.

59. The timing and sequence of events—Roxtec's failure to pay the promised bonus, Plaintiff's written complaints about unpaid wages, Roxtec's refusal to provide him with a 2024 bonus plan, the sudden PIP with burdensome conditions, the extension of the PIP, and the ultimate termination for a disputed reason—support an inference that Roxtec retaliated against Plaintiff because he complained about unpaid and underpaid compensation and about related conduct he reasonably believed was unlawful.

## E. Harm to Plaintiff

60. As a result of Roxtec's failure to pay the promised 2023 bonus, Plaintiff has suffered lost wages and unpaid earned compensation.

61. As a result of his termination, Plaintiff has suffered additional lost wages, lost benefits, emotional distress, reputational harm, and other damages.

62. Plaintiff has diligently sought alternative employment but has not fully replaced the compensation and benefits he lost as a result of his termination by Roxtec.

63. All conditions precedent to Plaintiff's claims have been satisfied, performed, or lawfully excused.

64. Plaintiff is not a party to any valid agreement requiring arbitration or mandating an exclusive forum outside this Court for the claims asserted in this action.

## V.    CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT

(Annual Bonus and Compensation)

65. Plaintiff realleges paragraphs 8–12, 13–20, 21–33, 34–35, and 60 as if fully set forth herein, but only as to this Count.

66. The Offer Letter and subsequent compensation communications from Roxtec, including written and oral statements by Campos and Martin, and the provision of the February 2023 Bonus Template and official sales targets, set forth the material terms of an enforceable agreement regarding Plaintiff's compensation.

67. Roxtec promised Plaintiff a performance-based annual bonus calculated using specific, objective performance metrics and objective sales targets that Roxtec communicated to him—not a discretionary bonus left to Roxtec's sole judgment. In addition, Roxtec promised that Plaintiff would receive an annual

bonus as part of his annual compensation. These terms constitute a definite—not vague or illusory—offer.

68. Plaintiff accepted Roxtec's offer, including the compensation structure, and performed his duties as Sales Manager throughout FY 2023, meeting the conditions for eligibility for an annual bonus and working toward the sales targets Roxtec established.

69. Plaintiff remained employed through the end of FY 2023 and satisfied all conditions required of him to earn his performance-based bonus. By December 31, 2023, Plaintiff's bonus had accrued as an enforceable contractual right. Roxtec knew Plaintiff had met the performance criteria under the operative compensation terms communicated to him.

70. Roxtec breached its contractual obligations by failing to pay Plaintiff the bonus he earned under the compensation structure and performance criteria it had communicated to him. Instead, Roxtec retroactively applied an undisclosed internal plan it knew Plaintiff had never seen and paid him only approximately $5,000—a fraction of what he earned.

71. As a direct and proximate result of Roxtec's breach, Plaintiff has suffered damages, including unpaid bonus compensation and other wage-related losses.

72. Plaintiff is entitled to recover all damages resulting from Roxtec's breach of contract, including unpaid bonus amounts, other lost compensation, and related damages, plus prejudgment interest.

## COUNT II – PROMISSORY ESTOPPEL

### (Alternative to Count I)

73. Plaintiff realleges paragraphs 8–12, 13–20, 21–33, 34–35, and 60 as if fully set forth herein, but only as to this Count, and pleads this claim in the alternative to Count I.

74. Roxtec, through its managers and written communications, made clear and definite promises to Plaintiff that he would receive a performance-based annual bonus as part of his compensation if he met specified performance targets. These promises were definite as to their terms—tying the bonus to objective, calculable metrics—and as to time—the bonus would be paid annually based on fiscal year performance.

75. Roxtec further promised and represented that Plaintiff's annual bonus would be calculated using the sales targets, thresholds, and metrics it provided, including the February 2023 Bonus Template and the official Power Segment sales figures.

76. Roxtec knew and reasonably expected that Plaintiff would rely on these promises and representations when deciding whether to accept its offer, and when performing his work and remaining at Roxtec throughout FY 2023.

77. Plaintiff reasonably relied on Roxtec's promises by accepting a lower base salary than he otherwise would have required, by remaining employed at Roxtec, and by performing his duties throughout FY 2023 in pursuit of the promised bonus. Roxtec knew Plaintiff was relying on these promises.

78. Plaintiff's reliance was to his detriment. He accepted reduced base compensation, forewent other employment opportunities, and devoted his efforts throughout FY 2023 to meeting Roxtec's targets—all in reliance on the promised bonus structure. He received only a fraction of the bonus he earned and reasonably expected.

79. Roxtec knew Plaintiff had relied on its promises yet failed to honor them. Instead of paying the bonus Plaintiff earned under the communicated structure, Roxtec paid him only approximately $5,000.

80. Injustice can be avoided only by enforcing Roxtec's promises and awarding Plaintiff the bonus and other damages he reasonably expected and relied upon.

81. Plaintiff is entitled to damages in an amount equal to the unpaid bonus and other losses caused by his reasonable reliance on Roxtec's promises.

## COUNT III – FRAUDULENT CONCEALMENT

82. Plaintiff realleges paragraphs 8–12, 13–20, 21–33, 34–35, 40–43, and 60 as if fully set forth herein, but only as to this Count.

83. During FY 2023, Roxtec, through Campos and Martin, knew of the internal April 2023 bonus plan and intentionally concealed its existence and terms from Plaintiff, while intending to use that plan—rather than the figures it had provided to Plaintiff—to calculate his 2023 bonus. Upon information and belief, other Roxtec executives with authority over compensation decisions, including, but not limited to, the CEO who allegedly signed or approved the April 2023 Plan, also knew of the plan and of its concealment from Plaintiff. The identities of all individuals who participated in or approved the decision to conceal the April 2023 Plan from Plaintiff are peculiarly within Roxtec's knowledge and control.

84. The existence and terms of the April 2023 Plan were material facts that Roxtec had a duty to disclose. Roxtec had previously given Plaintiff the February 2023 Bonus Template and sales targets and directed him to rely on those figures for his bonus. The existence of a different, undisclosed plan would have affected Plaintiff's understanding of his compensation and his decision to remain employed and perform throughout FY 2023.

85. Roxtec had a duty to disclose the material facts regarding the bonus plan it intended to apply to Plaintiff, because (a) by providing Plaintiff with the February 2023 Bonus Template and sales targets and directing him to use those figures to calculate his bonus, Roxtec made a partial disclosure that obligated it to tell the whole truth—including whether a different plan might later be substituted; (b) the material facts Roxtec concealed—the existence and terms of the April 2023 plan—directly affected Plaintiff's total earning for the relevant year. Therefore, Roxtec had a duty to disclose either the operative bonus plan or the fact that it intended to apply different terms. By withholding the April 2023 Plan while possessing superior knowledge of the terms that would actually govern Plaintiff's compensation, Roxtec deprived Plaintiff of information essential to understanding his total earnings and making informed decisions about his continued employment.

86. Roxtec concealed from Plaintiff the existence and terms of the April 2023 Plan it claimed to be using, in order to secure Plaintiff's full year of work and performance under the more favorable February 2023 plan and figures, while reserving for itself the ability to later apply the undisclosed April 2023 Plan to reduce his bonus.

87. Plaintiff did not know about the April 2023 Plan during FY 2023 and could not have discovered it by reasonable diligence because it was an internal document that Roxtec did not provide to him, did not ask him to sign, and did not mention

to him during that year. Plaintiff first learned of Roxtec's claimed reliance on the April 2023 Plan in or about February 2024, after the fiscal year had closed and after he began questioning the drastically reduced bonus amount.

88. Plaintiff reasonably relied on the February 2023 Bonus Template and the figures Roxtec had provided, continuing to work through FY 2023, managing his team, and striving to meet the performance targets he had been given, all under the belief that his bonus would be determined under those terms. Roxtec's concealment of the April 2023 Plan allowed Plaintiff's reliance to continue. Had Roxtec disclosed the April 2023 Plan, Plaintiff may have sought other employment, negotiated different terms, or managed his team differently.

89. As a direct and proximate result of Roxtec's fraudulent concealment, Plaintiff was underpaid for his 2023 performance and suffered monetary and other damages, including the loss of the additional bonus compensation he would have received had Roxtec honored the plan and the figures it had communicated to him.

90. Plaintiff is entitled to recover compensatory damages for this fraudulent concealment and, because Roxtec's conduct was intentional and in conscious disregard of his rights, punitive damages as permitted by law on this Count.

## COUNT IV – FRAUDULENT MISREPRESENTATION

91. Plaintiff realleges paragraphs 8–12, 13–20, 21–33, 34–35, 40–43, and 60 as if fully set forth herein, but only as to this Count.

92. In or about September 2022, in the Offer Letter and related hiring communications, Roxtec represented to Plaintiff that he would be eligible to participate in an annual incentive program as part of his compensation and that the incentive bonus would be based on performance and key objectives.

93. In or about February 2023, Campos sent Plaintiff the February 2023 Bonus Template and official sales targets and specifically directed Plaintiff to use those figures and that template to calculate his 2023 bonus, thereby representing that this was the operative structure for his annual bonus.

94. In or about February 2023, Martin confirmed in writing that Plaintiff's bonus was tied to performance targets and that his compensation structure included a performance-based bonus as part of his annual compensation, further reinforcing that the bonus would be determined by objective criteria communicated to him in advance.

95. These representations were false. Roxtec did not use the February 2023 Bonus Template or the official sales targets Campos provided to calculate Plaintiff's 2023 bonus. Instead, Roxtec applied a different, undisclosed methodology— purportedly an "April 2023 Plan"—that Plaintiff had never seen, agreed to, or

been told would govern his compensation. The bonus Roxtec ultimately paid Plaintiff bore no relationship to the performance metrics and calculation structure he had been directed to follow.

96. When Campos provided Plaintiff with the February 2023 Bonus Template and directed him to use those figures to calculate his bonus, Roxtec either knew it would not honor those terms or made the representation with reckless disregard for whether it would. Roxtec represented that Plaintiff's bonus would be calculated using the figures provided, when in fact Roxtec intended to apply— or reserved the right to apply—a different, undisclosed methodology.

97. In or about February 2024, after FY 2023 had closed and after Plaintiff began questioning his reduced bonus, Martin told Plaintiff that an April 2023 bonus plan for him had been approved and implemented as his effective 2023 bonus plan, and that Roxtec had used this April 2023 plan to calculate his approximately $5,000 bonus.

98. Upon information and belief, Martin's February 2024 statement was false and materially misleading, including but not limited to the following respects: (a) no separate April 2023 bonus plan for Plaintiff had, in fact, been approved and adopted as his operative 2023 plan; and (b) even if Roxtec later produces an internal document labeled as an April 2023 plan, that document was never communicated to Plaintiff during FY 2023, was not adopted as his operative plan in any way disclosed to him while he was performing, and was invoked

only after the fact to justify reducing his bonus. The specific contents and approval history of any alleged April 2023 Plan are matters solely within Roxtec's possession and control. Plaintiff's allegations on information and belief are based on the fact that (i) Roxtec never provided him with any signed or partially signed 2023 bonus plan; (ii) Campos acknowledged in a recorded conversation that an error had been made in the bonus figures provided to Plaintiff; and (iii) the details of Roxtec's internal approval processes are peculiarly within Roxtec's knowledge and have not been disclosed to Plaintiff despite his requests.

99. Roxtec, through Campos and Martin, intended that Plaintiff rely on their representations by accepting the position at the offered salary, by remaining employed, and by performing his duties throughout FY 2023 in pursuit of the performance metrics he had been given, and by accepting Roxtec's explanation for the reduced bonus in 2024.

100.    Plaintiff did, in fact, reasonably rely on Roxtec's representations by accepting employment, staying through the end of the fiscal year, working to meet the sales targets and objectives laid out in the February 2023 plan and figures, accepting partial payment of his bonus while seeking resolution, and attempting to resolve the dispute internally rather than immediately pursuing legal remedies—efforts that ultimately led to his placement on a PIP and termination. Plaintiff did not discover the truth about any alleged April 2023

Plan until February 2024, when Martin and Campos first referred to it in connection with the drastically reduced bonus.

101.    As a direct and proximate result of Roxtec's fraudulent misrepresentations, Plaintiff has suffered lost bonus compensation and other financial and non-financial harms. Plaintiff is entitled to compensatory damages and, because Roxtec's conduct was deliberate and made with reckless disregard for the truth, punitive damages as permitted by law on this Count.

**COUNT V – RETALIATION IN VIOLATION OF**
**FLORIDA WHISTLEBLOWER'S ACT (Fla. Stat. § 448.102)**

102.    Plaintiff realleges paragraphs 8–12, 13–20, 21–28, 34–45, 46–59, and 60–62 as if fully set forth herein, but only as to this Count.

103.    In his February 20, 22, and 23, 2024 emails to Campos and HR Director Martin, Plaintiff objected that Roxtec had wrongfully withheld his 2023 earned bonus compensation, refusing to pay him earned wages for work he already performed, thus retroactively treating his performance-based bonus as discretionary, and for failing to produce or preserve accurate records of the bonus structure it claimed governed his compensation.

104.    Roxtec's conduct violated federal and Florida wage laws applicable to Roxtec and pertaining to its business operations, including Fla. Stat. § 448.08 and the Fair Labor Standards Act. Accordingly, Plaintiff objected to activity he

reasonably believed was in violation of laws applicable to Roxtec's business within the meaning of Fla. Stat. §§ 448.102(3) and 448.101(4). Thus, Plaintiff's objections to this conduct constitute protected activity under the Florida Whistleblower's Act.

105.    Roxtec's managers and HR knew of Plaintiff's objections and complaints regarding the nonpayment of his earned compensation.

106.    After Plaintiff made these complaints, Roxtec engaged in adverse actions against him, including:

  a. Failing and refusing to provide him with a 2024 bonus plan while providing such plans to others;
  b. Undermining his authority by bypassing him in communications with his direct reports;
  c. Placing him on an onerous and unjustified PIP;
  d. Extending the PIP without legitimate performance-related justification; and
  e. Terminating his employment based on a claimed reason that was false and pretextual.

107.    Roxtec took these adverse actions because of, and in retaliation for, Plaintiff's protected complaints and objections. Within weeks of Plaintiff's February 2024 complaints, Roxtec began withholding his 2024 bonus plan, undermining his authority, and initiating the PIP process that led to his

termination. The close temporal proximity between Plaintiff's protected activity and these adverse actions supports an inference of causation.

108.     Roxtec's retaliation caused Plaintiff to suffer lost wages, lost benefits, emotional distress, reputational harm, and other damages.

109.     Plaintiff is entitled to all damages available under the Florida Whistleblower's Act, including lost wages, lost benefits, compensatory damages, and, where permitted, attorney's fees and costs.

## COUNT VI – RETALIATION IN VIOLATION OF THE FLSA
### (29 U.S.C. § 215(a)(3))

110.     Plaintiff realleges paragraphs 8–12, 13–20, 21–28, 34–45, 46–59, and 60–62 as if fully set forth herein, but only as to this Count.

111.     In his February 2024 emails, Plaintiff complained that Roxtec refused to pay him earned compensation for work already performed and was withholding wages owed for his 2023 performance. Plaintiff also objected to Roxtec's handling and documentation of the bonus structure governing his compensation. Plaintiff reasonably and in good faith believed that this conduct—refusing to pay earned compensation, thereby retroactively converting his performance-based bonus into a gratuity Roxtec could withhold at will, and failing to provide accurate documentation—violated federal wage-and-hour law, including 29 U.S.C. § 211(c) and 29 C.F.R. § 778.211(b).

112.    Plaintiff's complaint challenging this conduct was "under or related to" the FLSA within the meaning of 29 U.S.C. § 215(a)(3) and was sufficiently clear to provide Roxtec fair notice that he was asserting his right to be paid for work performed. Plaintiff made these complaints in good faith belief that Roxtec's conduct violated federal wage and hour law.

113.    Roxtec knew of Plaintiff's protected complaints through Campos and Martin.

114.    After Plaintiff engaged in this protected activity, Roxtec retaliated against him and subjected him to materially adverse actions, including (a) excluding him from the normal 2024 bonus plan process; (b) placing him on an onerous and unjustified PIP; (c) extending the PIP without legitimate justification; and (d) terminating his employment.

115.    Roxtec took these adverse actions because of, and in retaliation for, Plaintiff's protected activity. The close temporal proximity between Plaintiff's February 2024 complaints and the onset of the PIP, its extension, and his termination demonstrates the causal connection.

116.    As a result of Roxtec's retaliation in violation of the FLSA, Plaintiff has suffered lost wages, lost benefits, and other compensable harms.

117.    Plaintiff is entitled to all remedies available under the FLSA's anti-retaliation provisions, including back pay, front pay, liquidated damages, and reasonable attorney's fees and costs as permitted by law.

## COUNT VII – BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

118.    Plaintiff realleges paragraphs 8–12, 13–20, 21–33, 34–35, 46–58, and 60–62 as if fully set forth herein, but only as to this Count.

119.    An implied covenant of good faith and fair dealing existed as part of the parties' contractual relationship. This covenant governed Roxtec's exercise of any discretion retained under the bonus structure, including discretion regarding the timing, communication, implementation, and administration of bonus plans, and required Roxtec to act in a manner consistent with Plaintiff's reasonable expectations arising from the compensation terms communicated to him.

120.    To the extent the parties' agreement did not expressly resolve every aspect of how Plaintiff's annual bonus would be finalized or administered, Roxtec retained discretion in implementing and communicating those terms. The implied covenant required Roxtec to exercise that discretion honestly and in good faith, and not in a manner that would defeat the purpose of the bonus arrangement or deprive Plaintiff of the benefit of the compensation structure he had been led to rely upon.

121.    Roxtec breached the implied covenant of good faith and fair dealing through conduct distinct from any breach of express contractual terms. Even if Roxtec retained some discretion in administering bonus plans, it exercised that discretion in bad faith and in a manner designed to frustrate Plaintiff's reasonable expectations, including by:

a.  Providing Plaintiff with the February 2023 Bonus Template and directing him to rely on it, while secretly maintaining an internal April 2023 Plan that it never disclosed—conduct that exploited any ambiguity or gap in the parties' agreement regarding which plan would govern;

b.  Exercising its discretion over the timing and manner of bonus-plan communications in a way calculated to allow Plaintiff to perform a full year of work before revealing that different, less favorable terms would apply;

c.  Retaliating against Plaintiff after he objected to this treatment by refusing to provide him with a 2024 bonus plan, undermining his authority, placing him on a pretextual PIP, and terminating him—thereby frustrating his contractual expectation of continued employment and future bonus eligibility; and

d.  Using its discretion over internal processes, including discipline and termination, to deprive him of the benefits of the parties' agreement, including his earned 2023 bonus, his 2024 bonus eligibility, and continued employment.

122.    Roxtec knew its conduct would frustrate Plaintiff's reasonable expectations under the parties' agreement, and its conduct did frustrate those expectations and deprived him of the benefits of his bargain.

123.    As a direct and proximate result of Roxtec's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages, including unpaid bonus compensation, other lost wages, and consequential losses.

124.    Plaintiff is entitled to recover damages for Roxtec's breach of the implied covenant of good faith and fair dealing.

## COUNT VIII – UNJUST ENRICHMENT

### (Alternative to Contract Claims)

125.    Plaintiff realleges paragraphs 8–12, 13–20, 21–28, 34–35, and 60 as if fully set forth herein, but only as to this Count, and pleads this claim in the alternative to his contract-based claims.

126.    Plaintiff conferred a substantial benefit upon Roxtec by accepting and performing a high-responsibility Sales Manager role for the Power T&D segment throughout FY 2023, managing his team, and contributing to Roxtec's sales performance and revenue.

127.    Plaintiff did not agree to perform these services in exchange for his base salary alone. The parties' compensation arrangement, as communicated by Roxtec and understood by both parties, provided that Plaintiff's total annual compensation would consist of his base salary plus his *full* performance-based bonus. Plaintiff accepted a lower base salary than he had originally sought for a

position of this scope in reliance on this arrangement. Roxtec knew Plaintiff accepted the position on this basis.

128.     Roxtec knowingly accepted and retained the full benefit of Plaintiff's year of services and performance—the same services Plaintiff would have provided had Roxtec honored the complete compensation arrangement—while paying him only his base salary and an approximately $5,000 bonus, a small fraction of the bonus he earned and was promised. Roxtec thus received services rendered in exchange for total compensation of base salary plus a full performance-based bonus but paid only a portion of that agreed total compensation.

129.     This is not a case where an employee received his full agreed compensation and now seeks an additional discretionary bonus. Plaintiff was hired for, and performed services in exchange for, a compensation package comprising base salary *and* a substantial earned bonus. Roxtec received the complete benefit of that bargain—Plaintiff's full year of work, effort, and results—but retained the difference between what it promised and what it paid. If no enforceable contract governs Plaintiff's bonus, it would be inequitable for Roxtec to retain this windfall without paying Plaintiff the reasonable value of what he conferred.

130.     If no enforceable contract is found, Plaintiff is entitled to restitution in an amount equal to the unpaid portion of the reasonable value of the benefit he

conferred on Roxtec, including the unpaid bonus and related compensation that Roxtec unjustly retained.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant and award:

a. Unpaid bonus compensation and any other unpaid earned compensation;

b. Back pay, front pay, and lost benefits;

c. Compensatory damages, including for emotional distress and reputational harm, where permitted;

d. Liquidated damages where permitted by statute;

e. Punitive damages on Counts III and IV only, as permitted by law;

f. Prejudgment and post-judgment interest;

g. Reasonable attorney's fees and costs where authorized by statute or contract; and

h. Such other and further legal and equitable relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

[Signature and Certificate of Service on the following page]

Respectfully submitted,

DAVID ADEEB
Plaintiff, Pro Se
6711 Bar S Bar Trl
Zephyrhills, FL 33541
727-222-3114
davidadeeb@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of February, 2026, a true and correct copy of the foregoing was served by email on the following counsel of record for Defendant Roxtec, Inc.:

- Amanda M. Mercado: amercado@fordharrison.com;
- Joseph H. Harris: jhharris@fordharrison.com;
- Kirk Turner: Kirk.Turner@mcafeetaft.com
- Grace DeJohn: grace.dejohn@mcafeetaft.com
- Jacob Crawford: jake.crawford@mcafeetaft.com

DAVID ADEEB

Plaintiff, Pro Se