MAR 11 2026 PM 1:39
FILED - USDC - FLMD - TPA

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE

## DISTRICT OF FLORIDA

## TAMPA DIVISION

### DAVID ADEEB, Plaintiff,

### v.

### ROXTEC INC., a Foreign Profit Corporation, Defendant.

Case No.: 8:25-cv-02571-WFJ-CPT

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION

## TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

[Content begins on the following page]

# I. INTRODUCTION

Defendant Roxtec Inc.'s Motion to Dismiss the Second Amended Complaint ("SAC") should be denied in its entirety. Defendant's Motion attacks the *merits* of Plaintiff's allegations rather than their *plausibility*. Roxtec's Motion misstates the SAC, relies on disputed factual premises, and asks the Court to resolve factual and disputed issues that are reserved for discovery.

# II. GOVERNING LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the Court "accepts the factual allegations in the complaint as true and construes them in the light most favorable to plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). A Rule 12(b)(6) motion is not a vehicle for resolving factual or disputed issues or weighing evidence.

# III. BREACH OF CONTRACT IS ADEQUATELY PLED

## A. SAC's Allegations Are Based on the Totality of Written Communications

Roxtec's attack on Count I rests on a false premise: that Plaintiff's breach-of-contract claim depends on the Offer Letter and the February 2023 Bonus Template. This mischaracterizes the allegations set forth in the SAC. Count I turns on the *totality* of Roxtec's written communications and promises, including management and HR emails that materially supplemented the Offer Letter. Those communications added

Page 1 of 20

specific financial targets, performance thresholds, and calculation methodology, and repeatedly confirmed that Plaintiff's bonus was performance-based and part of his annual compensation. *See* SAC ¶¶ 16, 22–27, 66.

Under Florida law, contracts may be formed or modified by multiple writings, and material terms need not appear in a single document. The Florida Supreme Court has explained that "the parties to a contract can discharge or modify the contract, however made or evidenced, through a subsequent agreement," and that "the parties' subsequent conduct also can modify the terms in a contract." *St. Joe Corp. v. McIver*, 875 So. 2d 375 (Fla. 2004). Here, the SAC alleges that Roxtec's Offer Letter established Plaintiff's eligibility for performance-based bonus compensation; that Campos provided Plaintiff with the February 2023 Bonus Template and instructed him to use specific figures supplied by Roxtec's finance department to calculate his bonus; and that these communications contained specific financial targets, thresholds, and formulas. SAC ¶¶ 22–27. Unlike vague promises, the SAC alleges a definite methodology, with sales targets, thresholds, and performance metrics supplied by Roxtec. SAC ¶ 25.

## B. The CEO-Approval Argument Raises Factual Issues, Not Pleading Defects

Roxtec's primary defense rests on the premise that the February 2023 Bonus Template states it "is subject to the approval of the CEO of Roxtec, Inc.," and was never approved. Yet it maintains that an approved plan, presumably signed by the CEO, governed Plaintiff's bonus compensation (SAC Ex. E, Doc. 58–6) and was disclosed to Plaintiff (Doc. 59 at 19).

Defendant sums up its argument against this Count, stating, "Because Fowler did not approve the Proposed Plan, and Campos and Martin did not have authority to bind Roxtec, Plaintiff's breach of contract claim based on the Proposed Bonus Plan fails as a matter of law." Doc. 59 at 7. But this argument rests on two unproven assumptions: (1) Roxtec's CEO never signed or otherwise approved Plaintiff's bonus plan; and (2) neither Campos—Roxtec's Vice President of Sales—nor Martin—Roxtec's HR Director—possessed sufficient authority to bind Roxtec. The SAC explicitly alleges that Plaintiff "lacks personal knowledge as to whether any such plan in fact existed, was signed, or was formally 'approved' by any executive" and that "if any such internal approvals existed, *including any CEO signature*, they were handled entirely within Roxtec and were never shared with or explained to Plaintiff." SAC ¶¶ 29, 33 (emphasis added). On the one hand, Roxtec argues no enforceable contract exists because no plan was signed or approved. On the other hand, it acknowledges that an April 2023 Plan was approved and used to calculate and partially pay Plaintiff's bonus. *See* Doc. 59 at 19 and Doc. 58-6. These positions cannot be reconciled.

Tellingly, Roxtec's own HR Director informed Plaintiff, in writing, that the April 2023 Plan—the plan Roxtec claims was "approved and implemented" and thus governed Plaintiff's bonus—was approved "by [Roxtec's] finance department." Doc. 58-6. That email did not state that Plaintiff's bonus plan was signed or approved by Roxtec's CEO. This undermines Defendant's present argument that CEO's signature is a prerequisite to the plan's approval. In any event, the Court cannot determine at the pleading stage which version was operative, whether Roxtec relied on an approved

Page 3 of 20

plan internally while withholding it from Plaintiff, or whether a signed copy of Plaintiff's bonus plan might surface in discovery.

Under Florida law, conditions precedent are not favored, and a contractual provision requiring approval is not automatically a condition precedent to contract formation—it may instead be a condition precedent to performance under an already-formed agreement. *Land Co. of Osceola Cty. v. Genesis Concepts, Inc.*, 169 So. 3d 243, 247 (Fla. 4th DCA 2015). The distinction is dispositive here. The phrase "[t]he bonus plan is subject to approval by the CEO of Roxtec, Inc." does not unambiguously negate contract formation—it is at least equally susceptible to the reading that CEO approval conditioned Roxtec's obligation to pay, not the existence of a binding agreement. That ambiguity cannot be resolved on a motion to dismiss.

Even if CEO approval were a condition precedent to formation, Roxtec waived it: "[c]onditions precedent may doubtless be waived by the party in whose favor they are made," *Jones v. United States*, 96 U.S. 24, 28 (1877), and waiver may be inferred from "conduct or acts that put the other party off his guard[.]" *United States v. Health First, Inc.*, No. 6:14-cv-501, Doc. 142 at 10 (M.D. Fla. May 10, 2017). Here, Roxtec directed Plaintiff's performance throughout all of FY 2023 under the February 2023 figures without ever disclosing that a different plan existed. Whether that conduct constitutes waiver is a factual question that cannot be resolved on a motion to dismiss.

## C. *OneSource* Is Distinguishable

Roxtec's heavy reliance on *OneSource Facility Services, Inc. v. Mosbach* is misplaced. First, that case was decided at summary judgment—after full discovery—

Page 4 of 20

not at the pleading stage. Second, in *OneSource* the court evaluated a developed factual record and concluded that a company-wide management incentive plan summary distributed to employees did not create enforceable contract rights because it contained no language expressing the parties' mutual intent to be bound. The court further noted that the employer cancelled the plan company-wide, and "[n]o Vice President received an MIC bonus for that year"—unlike here, where Defendant did not cancel the bonus plan but instead denied full payment only to Plaintiff. *OneSource Facility Services, Inc. v. Mosbach*, 508 F. Supp. 2d 1115, 1118 (M.D. Fla. 2007). Moreover, in *OneSource*, the Management Incentive Compensation Plan ("MIC") "stated that '[t]he company may terminate, amend or modify, the MIC Plan in any respect, at any time' and 'participants will not have any vested right to the MIC payment except as otherwise provided herein.'" *Id.* Thus, this Court explains that, in *OneSource*, "even if the bonus plan were part of the plaintiff's employment contract, the employer retained discretion to award bonuses, rendering illusory any promise to pay a bonus." *Focus Management Group USA, Inc. v. King*, 171 F. Supp. 3d 1291, 1301 (M.D. Fla. 2016). The SAC alleges individualized, finance-department-issued communications providing Plaintiff with specific targets—not a generic company-wide plan as in *OneSource*—and *OneSource* therefore provides no basis for dismissal here.

**D. Roxtec's Own Characterization Defeats Its Motion**

Defendant's motion concedes the bonus was "discretionary in its amount." Doc. 59 at 24. This concession confirms that only the amount of bonus was discretionary and undermines Defendant's argument that no enforceable contract

Page 5 of 20

existed. In *Focus Management*, this Court distinguished between bonuses that are "wholly within the discretion of the employer and essentially illusory in nature" and those that are "definite as to methodology, expressly offered as an incentive to secure [the employee], and ... definite as to the time of its accrual." *Focus Management*, 171 F. Supp. 3d at 1299. The Court held that where a bonus is "only uncertain as to the ultimate discretion to pay ... this discretion is constrained once the right to payment has accrued or vested." *Id*. Here, as in *Focus Management*, the SAC alleges Plaintiff's bonus was definite as to methodology—calculated using specific sales targets and fixed formulas communicated by Roxtec (SAC ¶¶ 21–26); expressly offered as an incentive to secure Plaintiff's employment (SAC ¶¶ 14–18); and definite as to accrual—tied to fiscal year 2023 performance (SAC ¶ 69). Roxtec even communicated the methodology to Plaintiff "in the ensuing months," just as the employer in *Focus Management* did "by way of scorecards." *Focus Management,* 171 F. Supp. 3d at 1299. Defendant cannot now disclaim the bonus obligation it used to secure Plaintiff's services.

Defendant admits a bonus was owed; it disputes only the amount—whether $5,000 or a different amount. That is a breach of contract dispute over damages, not formation—and it cannot be resolved at the pleading stage. Thus, Count I states a plausible claim and should proceed to discovery.

## IV. PROMISSORY ESTOPPEL IS ADEQUATELY PLED

The SAC satisfies the elements of a promissory estoppel claim as follows:

**Clear and Definite Promise:** The SAC alleges that Roxtec promised Plaintiff a performance-based annual bonus as part of his total compensation (SAC ¶¶ 16–18), and that Campos provided specific performance targets and a calculation methodology—the February 2023 Bonus Template—to determine that bonus (SAC ¶¶ 21–27). Unlike vague promises, the SAC alleges definite terms: specific figures, specific thresholds, and auto-calculating formulas. SAC ¶¶ 23–26, 74–75. Defendant argues that the "budgeted" language in the Offer Letter was not sufficiently definite to support reasonable reliance. Doc. 59 at 15–16. Yet this Court has held that such specificity satisfies the definiteness requirement. As in *Focus Management*, where the court found the bonus structure was "expressly offered as an incentive to secure [the employee]" (*Focus Mgmt.*, 171 F. Supp. 3d at 1299), the SAC alleges that Roxtec used the "budgeted at 25%" language to induce Plaintiff to accept employment at a lower base salary. SAC ¶ 18.

**Expectation of Reliance:** The SAC alleges that Roxtec reasonably should have expected its compensation representations to induce reliance, including Plaintiff's acceptance of a lower base salary and continued performance throughout FY 2023 under the communicated bonus structure. SAC ¶¶ 16–18, 21–27, 76–77, 79.

**Detrimental Reliance and Injustice:** The SAC alleges two distinct bases for reliance. First, Plaintiff accepted a lower base salary in reliance on Roxtec's representations that the performance-based bonus would be "a substantial and integral part of his annual compensation." SAC ¶ 18. Second, Plaintiff continued to perform throughout FY 2023 in reliance on the specific terms communicated in February 2023.

Page 7 of 20

SAC ¶¶ 27, 76–78. The SAC expressly alleges that injustice can be avoided only by enforcement of Roxtec's promises. SAC ¶ 80.

Roxtec argues that Plaintiff could not have relied on the February 2023 Bonus Template when accepting the job offer because the template came later. This mischaracterizes the claim. The SAC does not allege Plaintiff relied on the template when accepting the offer—it alleges he relied on the Offer Letter's bonus representations at that time, and *then* relied on the February 2023 terms throughout his continued performance during the same year. This Count is pled in the alternative to Count I, as permitted by Rule 8(d)(2). If Roxtec's communications were too indefinite to form an enforceable contract—as Roxtec contends—then promissory estoppel protects Plaintiff's reasonable reliance on those same communications. Roxtec cannot argue the communications were too vague to bind it contractually, yet definite enough that Plaintiff should have known not to rely on them.

Moreover, Defendant's reliance on *Griffin* is fundamentally inapposite because the promise at issue did not remain oral. The September 2022 promise was memorialized—and more defined—in writing through the February 2023 Bonus Template and accompanying finance-department-issued sales targets—transforming it into a written, formula-specific commitment with defined thresholds and auto-calculating metrics. SAC ¶¶ 23–26. Critically, by the time those writings were delivered, Plaintiff had already begun performing toward the promised bonus—his FY 2023 performance period commenced in January 2023, less than four months after the oral promise was made and one month before Campos provided the written template.

SAC ¶¶ 23, 69. Defendant cannot invoke a rule designed for dormant oral promises to extinguish a commitment that was both actively performed and subsequently reduced to writing. The February 2023 communications independently satisfy the definiteness and timing requirements for promissory estoppel. Finally, "[t]he question of whether Plaintiff's reliance was reasonable is a factual issue that cannot be resolved at the motion to dismiss stage." *Uphoff v. Wachovia Sec., LLC*, No. 09-80420-CIV-MARRA, Doc. 30 at 9 (S.D. Fla. Dec. 15, 2009). Accordingly, this Count should proceed to discovery.

## V. FRAUDULENT CONCEALMENT IS ADEQUATELY PLED

Defendant's argument to dismiss this Count rests on the assertion that "Roxtec did not have a legal duty to disclose the components or criteria of a bonus plan to Plaintiff." Doc. 59 at 19. This argument fails. The SAC satisfies Rule 9(b)'s particularity requirement and alleges that Roxtec concealed the April 2023 Plan while simultaneously providing Plaintiff the February 2023 Bonus Template. SAC ¶¶ 21–30.

This Court has previously recognized that "[p]artial inaccurate disclosure, or active concealment, may beget a duty to disclose that otherwise did not exist," and that "a duty to disclose may arise to correct an earlier partial or incomplete disclosure that was potentially misleading." *Boddison v. Gen. Motors LLC*, No. 8:20-cv-2139-WFJ-AEP, Doc. 67 at 5–6 (M.D. Fla. June 30, 2021). Moreover, "[t]hese issues—duty to disclose and actual failure of the same—are fact-bound[,]" and thus, improper for resolution on a motion to dismiss. *Id.* at 5. Significantly, this Court has also held that "[w]here a party in an arm's-length transaction undertakes to disclose information, all

material facts must be disclosed." *Id.* at 5 n.2 (quoting *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003)).

Here, by providing Plaintiff with the February 2023 Bonus Template and specific performance targets—a partial disclosure—Roxtec undertook to disclose the methodology governing Plaintiff's bonus. Having done so, Roxtec had a duty to disclose any material change or alternative plan. The SAC alleges that Roxtec instead concealed the April 2023 Plan, never provided it to Plaintiff, and only revealed its existence after FY 2023 had closed. SAC ¶¶ 28–30, 40–41. Plaintiff detrimentally relied on the partial disclosure by performing throughout FY 2023 under the expectation that the February 2023 methodology applied. SAC ¶¶ 88–89. Thus, Defendant's argument fails, and this Count should proceed to discovery.

## VI. FRAUDULENT MISREPRESENTATION IS ADEQUATELY PLED

Roxtec fundamentally mischaracterizes this Count. The fraud alleged is *not* that Campos told Plaintiff about a plan that *might* be adopted. The fraud is that Campos affirmatively directed Plaintiff to use the February 2023 Bonus Template and specific sales figures to calculate his bonus, representing that these were the operative terms governing his compensation. SAC ¶ 93. Furthermore, Roxtec's reliance on *Beebe v. ePartners Inc.* fails because the facts here are fundamentally different.

In *Beebe*, the employer's letter expressly stated the plan was not finalized, that counsel was still drafting documents, that attached figures were only "approximate payouts" pending Board approval, and to "let this [letter] serve as your *draft*

Page 10 of 20

agreement." *Beebe v. ePartners Inc.,* No. 8:05-cv-00805-SCB-EAJ, Doc. 50 at 2–3 (M.D. Fla. Apr. 26, 2006) (emphasis added). The court found no fraud because the employer "fully disclosed that the drafting of the plan was still in progress." *Id.* at 13. Here, Campos did not send Plaintiff a "draft agreement" with disclaimers about future finalization. He sent the official sales targets to Plaintiff from Roxtec's finance department and directed Plaintiff to use those figures to calculate his bonus. SAC ¶¶ 23–24, 93. There was no language stating, "this is preliminary," or "this is a draft." To the contrary, the SAC alleges that Plaintiff was never told—during all of FY 2023— that any other plan existed or would govern his compensation. The distinction is critical: *Beebe* involved transparent "non-committal language" that put the employee on notice that the plan was not finalized. The present case involves alleged misrepresentation: Roxtec provided operative instructions while secretly intending to apply a different, undisclosed methodology. This conduct supports a fraud claim.

Roxtec also argues that Plaintiff contradicts himself (Doc. 59 at 21). However, Plaintiff's position is consistent. First, Plaintiff alleges that in February 2023, Roxtec, through Campos, directed him to use the February 2023 Bonus Template and accompanying sales targets to calculate his 2023 bonus, thereby representing that those objective metrics governed his compensation. SAC ¶ 93. Second, Plaintiff alleges that in February 2024, Roxtec, through Martin, represented for the first time that an April 2023 Plan had been "approved and implemented" as Plaintiff's operative bonus plan and used to calculate his reduced bonus. SAC ¶¶ 97–98. These are two distinct

Page 11 of 20

statements, and the SAC alleges both statements were false when made by Defendant. SAC ¶¶ 95, 98.

Additionally, Roxtec argues that Plaintiff "had a duty to perform his job duties regardless of whether the Proposed Plan was implemented." Doc. 59 at 21. This misses the point of the reliance element. The SAC alleges that Plaintiff relied on Roxtec's representations by performing his duties throughout FY 2023 in pursuit of the specific performance metrics he had been given, by remaining employed through year-end, and by attempting to resolve the dispute internally. SAC ¶ 100. As to injury, the SAC alleges Plaintiff suffered "lost bonus compensation" as a direct result of the misrepresentations. SAC ¶ 101. Last, this Court has noted that the requirement for detailed allegations "is lessened when ... the specific factual information is within the defendant's control." *Boddison,* Doc. 67 at 4. The SAC alleges that the contents, approval history, and very existence of any April 2023 Plan are "matters solely within Roxtec's possession and control." SAC ¶ 98. Plaintiff cannot plead with greater specificity facts that Roxtec has refused to disclose. Therefore, this Count should proceed to discovery.

## VII. FLORIDA WHISTLEBLOWER ACT (Fla. Stat. § 448.102) IS ADEQUATELY PLED

To dismiss this Count, Defendant asserts that "the bonus at issue was discretionary in its amount" and that "the plan's language demonstrates the amount of any bonus awarded was discretionary." Doc. 59 at 24. But Defendant's own Offer Letter refutes this. The Offer Letter states that "[t]he incentive bonus is based on

performance, sales growth and meeting key objectives outlined for [Plaintiff's] sales responsibility." Doc. 58-2. A bonus "based on" objective criteria is not discretionary—it is earned upon satisfaction of those criteria. Moreover, Defendant's concession that the bonus was "discretionary in its *amount*"—not in its existence—confirms Plaintiff's right to the bonus as earned compensation and that the dispute concerns only the amount owed. Doc. 59 at 24 (emphasis added). That concession undermines rather than supports dismissal: if the bonus was earned and only its amount is disputed, Plaintiff's complaints about nonpayment constitute protected activity under the FWBA as a matter of course.

Furthermore, in *Focus Management*, the Court found that a bonus "definite as to methodology" and "definite as to the time of its accrual" is not illusory. *Focus Management*, 171 F. Supp. 3d at 1299. Taking the SAC's allegations as true—as they must be at this stage—Plaintiff's bonus fits this description: it was calculated using fixed formulas and specific sales targets communicated by Roxtec. SAC ¶¶ 21–26. A bonus earned under a definite methodology is compensation—not a gratuity—and Roxtec's refusal to pay it implicates Florida's wage laws. To the extent Roxtec argues its conduct did not violate Fla. Stat. § 448.08 because the bonus was discretionary, that argument fails for the same reasons set forth above: the bonus was calculated using objective, formula-based criteria and is not discretionary as a matter of law. Therefore, Plaintiff's complaints about nonpayment constitute protected activity under the FWBA. In any event, whether the bonus was discretionary or non-discretionary is ultimately a fact-bound issue, improper for resolution at the pleading stage.

Page 13 of 20

Defendant further argues that 29 C.F.R. § 778.211(b) applies only to non-exempt employees, citing 29 C.F.R. § 778.208. *See* Doc. 59 at 23. But the text of neither regulation excludes exempt employees, and Defendant cites no case law to support its assertion. While § 778.211(b) is used to determine which bonuses must be included in regular rate calculations, nothing in either provision limits the *definition* of discretionary versus non-discretionary bonuses to non-exempt employees. Defendant asks this Court to read an exemption into the regulation that does not exist.

Additionally, Defendant's characterization of Plaintiff's Written Objections as mere "internal disputes" mischaracterizes the record: the SAC shows Plaintiff complained about Roxtec's refusal to pay earned compensation, believing its conduct violated his wage rights under state and federal law. *See* SAC ¶¶ 36–45 and Doc. 58-5. Furthermore, Roxtec's suggestion that Plaintiff's Written Objections "did not tie the manager's alleged conduct to his bonus complaints" mischaracterizes the SAC and the temporal connection between Plaintiff's complaint and Roxtec's retaliatory conduct. The SAC alleges Defendant retaliated against Plaintiff through means including sidestepping his authority, placing him on a PIP, and eventually terminating his employment. Furthermore, the FWBA does not require a complaining employee to cite specific statutes, use particular terminology, or explicitly articulate the connection between his complaints and a statutory violation for his objections to constitute protected activity. *See* Fla. Stat. § 448.102(3).

Moreover, Florida courts remain divided on whether a plaintiff must prove an "actual violation" or merely a "good faith, objectively reasonable belief" that the

Page 14 of 20

employer's conduct was unlawful. Courts in this District have declined to resolve this split at the motion-to-dismiss stage, finding such determinations "fact-intensive and better left to the summary judgment stage." *Stuart Forsyth v. Woodforest Nat'l Bank, Inc.*, No. 8:23-cv-2375, Doc. 30 at 6 (M.D. Fla. Dec. 6, 2023).

While Defendant contends that Plaintiff's complaints "do not contain any allegations that Roxtec failed to keep records employers must retain under 29 U.S.C § 211(c)" (Doc. 59 at 24), this too mischaracterizes the SAC. Plaintiff's complaints challenged Roxtec's use of conflicting bonus figures—one set provided to Plaintiff, another allegedly "approved by Management," as well as Roxtec's failure to disclose the governing documentation. *See* Doc. 58-5. Whether Roxtec's maintenance of inconsistent bonus figures and refusal to produce supporting documentation implicates § 211(c) is a factual question that cannot be resolved at the pleading stage. Accordingly, this Count should proceed to discovery.

## VIII. FLSA RETALIATION (29 U.S.C. § 215(a)(3)) IS ADEQUATELY PLED

Roxtec seeks dismissal of this Count by invoking inapposite authority and reading exceptions into the FLSA that do not exist. The SAC alleges Plaintiff objected to Roxtec's nonpayment of earned, performance-based compensation; its reliance on undisclosed criteria and an undisclosed bonus plan; and its failure to provide documentation or records supporting the bonus calculation. SAC ¶¶ 36–45; Doc. 58-5. Plaintiff challenged unexplained figures, the absence of records, and concealment of the methodology used to determine his compensation—conduct he reasonably

believed to be unlawful. These allegations plausibly describe complaints "under or related to" the FLSA. 29 U.S.C. § 215(a)(3).

Roxtec's argument that Plaintiff was required to cite specific statutes or use terms like "misclassification" is contrary to law. The FLSA imposes no specific-words requirement. "To fall within the scope of the antiretaliation provision," either an oral or a written complaint "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011). Plaintiff's complaints satisfy that standard.

Roxtec's reliance on *Birchfield* and *McMillan*—neither of which is binding on this Court—is misplaced. Both cases involved complaints wholly untethered to any FLSA obligation: *Birchfield* dismissed a claim where the plaintiff alleged only that her employer manipulated her timecard "without an allegation that this manipulation caused [the employer] to fall out of compliance with the FLSA's minimum-wage or maximum-hour provisions, or any other relevant provision," *Birchfield v. Compass Health Network*, No. 4:24-cv-01575-SRC, Doc. 29 at 11 (E.D. Mo. Aug. 27, 2025). *McMillan* dismissed a purely contractual bonus dispute—with leave to amend, applying *Kasten*'s "sufficiently clear and detailed" standard—because the plaintiff never alleged the unpaid bonuses implicated any FLSA-protected right. *McMillan v. CPride Group LLC*, No. 2:21-cv-549-BJR, Doc. 36 at 11 (W.D. Wash. Apr. 22, 2022). Roxtec quotes *Birchfield* as if it announces a general rule requiring a plaintiff to plead

a completed minimum-wage or overtime violation—but that passage addresses only whether a bare timecard-manipulation allegation, standing alone, suffices. It does not.

This case is materially different. The SAC alleges Roxtec induced performance through promised, formula-based compensation; later substituted undisclosed criteria; failed to provide supporting records; and retaliated when Plaintiff objected. These are specific complaints about pay practices Plaintiff reasonably believed violated federal wage law—not the generalized, contract-only grievances at issue in *Birchfield* and *McMillan*. Notably, the SAC also alleges Plaintiff complained about Roxtec's failure to provide records supporting the bonus calculation—an independent basis for protected activity under 29 U.S.C. § 211(c) that Roxtec does not address under this Count. Its separate § 211(c) argument in the FWBA section cannot be imported here: the two statutes impose distinct standards, and a challenge lodged under one count does not substitute for a challenge under another. The § 211(c) basis for protected activity therefore stands uncontested.

Roxtec argues that "[t]he FLSA's regulation about discretionary bonuses... does not apply outside the overtime context." Doc. 59 at 25. But the text of neither § 778.208 nor § 778.211 contains that limitation, and Defendant offers no case law supporting its interpretation. Essentially, Roxtec asks this Court to manufacture a limitation the regulation does not contain.

Moreover, Plaintiff's status as a salaried, overtime-exempt employee does not defeat his retaliation claim. The FLSA's retaliatory firing provision applies "without qualification, to 'any employee'"—meaning neither the employee nor the employer

must be engaged in activities covered by the Act's wage and hour provisions for the anti-retaliation strictures to apply. *Cedano v. Alexim Trading Corp.*, 1:11-cv-20600-FAM, Doc. 22 at 7 (S.D. Fla. Nov. 1, 2011) (quoting *Wirtz v. Ross Packaging Co.*, 367 F.2d 549, 550–51 (5th Cir. 1966)); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting former Fifth Circuit decisions as binding precedent in this Circuit); *see also Obregon v. JEP Family Enter., Inc.*, 710 F. Supp. 2d 1311, 1314 (S.D. Fla. 2010) (holding that the FLSA's prohibition on retaliation is broader than its coverage of minimum wage or overtime violations). Nor does exempt status undermine the protected nature of Plaintiff's complaints: "[a]n assertion of statutory rights will still be covered by the FLSA even when the employee has a mistaken, but reasonable, belief that the employer is engaging in unlawful conduct." *Cedano*, Doc. 22 at 7. Even if Plaintiff was incorrect in believing Roxtec's pay practices violated federal wage law, his belief was at minimum reasonable—and that is all the FLSA requires. Regardless, these factual questions that cannot be resolved on a Rule 12(b)(6) motion. Accordingly, this Count should proceed to discovery.

## IX. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS ADEQUATELY PLED

Roxtec argues that Plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing because no express contract existed. The Defendant argues, "The unapproved Proposed Plan is not a contract." Doc. 59 at 12. As set forth in Section III above, the SAC adequately alleges the existence of an enforceable contract and breach thereof—and Defendant's argument presupposes a

disputed fact—i.e., Plaintiff's bonus plan was never approved—that is further contradicted by Defendant's own written communication. Doc. 58-6. Moreover, Roxtec's own characterization of the bonus supports this Count rather than defeating it. Roxtec concedes the bonus was "discretionary in its amount"—not in its existence, thereby conceding that a contractual right to a bonus existed and that the dispute concerns the amount owed, not the obligation to pay. Doc. 59 at 24. The implied covenant exists precisely to constrain such discretionary authority. "[W]here the terms of a contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Focus Management*, 171 F. Supp. 3d at 1300.

Here, Roxtec communicated a specific bonus methodology to Plaintiff, allowed him to work all of FY 2023 under that methodology, and then retroactively applied an undisclosed formula to reduce his compensation. SAC ¶¶ 21–34. That is precisely the arbitrary, retroactive exercise of discretion the implied covenant prohibits. Yet, whether Roxtec breached its duty of good faith cannot be resolved on a motion to dismiss. Accordingly, this Count should proceed to discovery.

## X. UNJUST ENRICHMENT IS ADEQUATELY PLED

Roxtec's reliance on *Uphoff v. Wachovia Sec., LLC* is misplaced. The *Uphoff* court dismissed an unjust enrichment claim because the complaint contained no allegation that the plaintiffs "were not paid for [their] services" or that they provided any service beyond what they were hired to do. *Uphoff v. Wachovia Sec., LLC,* No. 09-80420-CIV-

MARRA, Doc. 30 at 11 (S.D. Fla. Dec. 15, 2009). Neither circumstance is present here. To the contrary, the SAC expressly alleges that Plaintiff was not paid his full agreed compensation—his base salary alone was never intended to constitute complete payment for his services. SAC ¶¶ 14–18, 127. It alleges that Plaintiff accepted a lower base salary specifically because his total compensation was to include a substantial performance-based bonus. *Id.* Roxtec knew that "Plaintiff's total annual compensation would consist of his base salary plus his *full* performance-based bonus." SAC ¶ 127 (emphasis in original). Roxtec received the complete benefit of Plaintiff's full year of work, effort, and results under that arrangement—then paid only a $5,000 bonus, a fraction of the promised total compensation—while retaining the difference. SAC ¶¶ 128–129. Whether it is inequitable for Roxtec to retain that windfall is a factual question that cannot be resolved on a motion to dismiss. Accordingly, this Count should proceed to discovery.

## XI. CONCLUSION

Roxtec's Motion identifies no pleading deficiency—only factual disputes that must be resolved through discovery. Its arguments depend on unproven assumptions about CEO approval, internal authority, and the discretionary nature of Plaintiff's bonus—matters exclusively within Roxtec's knowledge and control that cannot be resolved on the face of the pleadings. Accepting the SAC's well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor, each count plausibly states a claim for relief. Defendant's Motion to Dismiss should be denied in its entirety, and this action should proceed to discovery.

Respectfully submitted,

_____
DAVID ADEEB
Plaintiff, Pro Se
6711 Bar S Bar Trl
Zephyrhills, FL 33541
727-222-3114
davidadeeb@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of March, 2026, a true and correct copy

of the foregoing was served by email on the following counsels of record for

Defendant Roxtec, Inc.:

- Amanda M. Mercado: amercado@fordharrison.com;
- Joseph H. Harris: jhharris@fordharrison.com;
- Kirk Turner: Kirk.Turner@mcafeetaft.com
- Grace DeJohn: grace.dejohn@mcafeetaft.com
- Jacob Crawford: jake.crawford@mcafeetaft.com

_____
DAVID ADEEB
Plaintiff, Pro Se